**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 95-60757**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**TABOR PITTMAN; THOMAS EDDY PARSONS,**

**Defendants-Appellants.**

_____

**Appeal from the United States District Court**
**for the Southern District of Mississippi**
**(1:95-CR-11-GR-02)**
_____
**January 27, 1997**
Before HIGGINBOTHAM, SMITH, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Appellants Tabor Pittman and Thomas Eddy Parsons appeal their convictions and sentences for conspiracy and possession with the intent to distribute illegal drugs. We **AFFIRM** Parsons' convictions on all but one count (count 8), and **REMAND** for entry of a judgment of acquittal on that count and for resentencing; we **AFFIRM** as to Pittman.

I.

---

[*]     Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

Appellants were convicted on one count of conspiracy to possess cocaine with intent to distribute. Each was also convicted on five substantive counts of possession with intent to distribute (Parsons, cocaine; Pittman, cocaine and marijuana). Parsons and co-defendant Eugene Parsons (appellant Parsons' first cousin) were acquitted on one count of attempting to possess cocaine with intent to distribute. Eugene Parsons was also acquitted on charges of witness intimidation and concomitant use of a firearm. Parsons was sentenced to 98 months imprisonment; Pittman, to 120 months.

II.

Numerous issues are presented on appeal. Pittman contends that the district court erred by failing to conduct an evidentiary hearing on his transfer of venue motion, to grant additional peremptory challenges, and to advise non-immunized Government witnesses of their Fifth Amendment privilege against self-incrimination; bases error on prosecutorial misconduct, evidentiary rulings, multiplicity, and drug quantity findings at sentencing; and adopts the issues raised by Parsons.

Parsons asserts that the district court erred by limiting cross-examination, by failing to conduct an *in camera* review to determine whether a file contained exculpatory information, by denying his severance motion, and by refusing to admit impeachment evidence; he also challenges the sufficiency of the evidence on one count and the drug quantity findings at sentencing. As reflected

*infra*, the only issues raised by Parsons that Pittman can adopt are the limitation of cross-examination and failure to conduct *in camera* review.  The remaining issues are specific to Parsons and thus are not susceptible to being adopted by Pittman.

A.

Citing extensive pretrial publicity about witness intimidation and murder and sex charges against him and/or his co-defendants, Pittman contends that he was entitled to a hearing on his change of venue motion.  We review the decision not to conduct an evidentiary hearing on the motion only for abuse of discretion.  **United States v. Smith-Bowman**, 76 F.3d 634, 637 (5th Cir.), *cert. denied*, ___ U.S. ___, 116 S. Ct. 2537 (1996).  "[A] defendant's motion alleges sufficient facts to warrant an evidentiary hearing when it is sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented."  *Id*. (internal quotation marks and citation omitted).  Along that line, "[i]n order for a defendant to justify a motion to transfer on the basis of prejudicial publicity, he must establish that prejudicial, inflammatory publicity so saturated the community jury pool as to render it virtually impossible to obtain an impartial jury."  *Id*. (internal quotation marks and citation omitted).

The district court did not abuse its discretion by not conducting an evidentiary hearing.  Pittman does not contend that

- 3 -

he could have presented evidence in addition to the newspaper articles and affidavits from local attorneys that were attached to his motion.

And, although it is unclear whether Pittman is challenging the merits of the ruling, we note that the record supports the district court's finding that the newspaper articles were not biased and included "coverage of defense charges of harassment, and community support for the plight of the defendants." Only two of the ten venirepersons who had read or heard about the case through the media were selected to serve on the jury, and both of them stated during *voir dire* that the information to which they had been exposed had not caused them to form an opinion about the case, and that it would not affect their ability to be fair and impartial. Accordingly, assuming Pittman intended to challenge also the denial of a change of venue, the court did not abuse its discretion by holding that Pittman failed to show that prejudicial publicity made it impossible for him to obtain an impartial jury.

### B.

Pursuant to FED. R. CRIM. P. 24(b), the appellants and their co-defendant, Eugene Parsons, were given ten peremptory challenges. All ten were used, but the defendants disagreed about whether to strike one of the prospective jurors. Pittman claims that the district court abused its discretion by failing to grant additional peremptory challenges.

The denial of an additional peremptory challenges request is reviewed only for abuse of discretion, *e.g.*, ***United States v. Hooper***, 575 F.2d 496, 498 (5th Cir.), *cert. denied,* 439 U.S. 895 (1978); we find none.  The record does not support Pittman's assertion that the juror he wanted to strike had been exposed to pretrial publicity.  Moreover, Pittman has not demonstrated that "the jury as finally selected was other than representative and impartial", or that he was prejudiced by the ruling.  *See* ***id***. (internal quotation marks and citation omitted).

C.

Next, Pittman challenges the district court's not advising non-immunized Government witnesses of their Fifth Amendment privilege against self-incrimination before allowing them to testify.  Even assuming that Pittman has standing to claim a violation of that privilege on behalf of the non-immunized witnesses, *see* ***United States v. Colyer***, 571 F.2d 941, 945 (5th Cir.), *cert. denied*, 439 U.S. 933 (1978) (because Fifth Amendment privilege is personal to the witness, a defendant may not claim the witness's privilege for his own benefit), we find no abuse of discretion; Pittman has not shown how he was prejudiced.

D.

The next issue is the district court's refusal to allow the defense to cross-examine Government witness Cowart regarding any bias he may have had in favor of the Government as a result of his

- 5 -

state arrest on 5 April 1995, and his subsequent release. "A district court has broad discretion to reasonably restrict cross-examination; however, this discretion is limited by the Sixth Amendment." *United States v. Mizell*, 88 F.3d 288, 292 (5th Cir.), *cert. denied*, ___ U.S. ___, 117 S. Ct. 620 (1996).

> Cross-examination to expose a witness's motive for testifying is always relevant as discrediting the witness and affecting the weight of his testimony, and is especially important with respect to witnesses who may have substantial reason to cooperate with the government. This right is particularly important when the witness is critical to the prosecution's case. A criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in *otherwise appropriate* cross-examination designed to show a prototypical form of bias on the part of the witness and thereby expose to the jury the facts from which jurors could appropriately draw inferences relating to the reliability of the witness.

*Id*. at 292-93 (emphasis added; internal quotation marks, brackets, and citations omitted). "The constitutional right is not violated, however, if the jury has sufficient information to appraise the bias and motives of the witness." *United States v. Cooks*, 52 F.3d 101, 104 (5th Cir. 1995) (brackets omitted).

At the conclusion of Cowart's direct examination, the court conducted an extensive evidentiary hearing concerning the circumstances of Cowart's arrest; Cowart, the arresting officer, and the case agent testified. That testimony established that Cowart was stopped by Deputy Sauro of the Harrison County Sheriff's

Department on suspicion of driving under the influence of alcohol. After the Deputy discovered that Cowart was driving with a suspended license, he placed Cowart in his patrol car, at which time he smelled alcohol on Cowart's breath. Although the Deputy testified that he ordinarily performed field sobriety tests at the scene, and had planned to conduct the test on Cowart prior to taking him to the jail, he did not do so in this instance because he became sidetracked when Cowart requested protective custody.

After Cowart told the Deputy that his life would be in danger if he were not placed in protective custody, and that a certain United States Customs Agent could provide verification, Deputy Sauro contacted the Agent, who met him and Cowart at the jail. Cowart was not given a breath test, and was charged only with careless driving and driving with a suspended license.

The defendants took the position that Cowart was not charged with DUI (which would have been a felony under State law because Cowart had two previous DUI convictions, and which would have resulted in revocation of his probation for a forgery conviction, for which he had been sentenced to 15 years imprisonment) because Cowart was a federal witness and because the Customs Agent had prevailed upon State authorities to reduce the charges.

The evidence, however, did not support the defendants' claims. Cowart denied any knowledge that the Customs Agent had intervened on his behalf, and testified that he asked that the Customs Agent be contacted only because he feared being placed in the general

prison population with Eugene Parsons, who had threatened his life. The Customs Agent testified that he had no intention of trying to get Cowart out of a DUI charge, but wanted only to try to make arrangements to get Cowart "some sort of reduced bond" in order to keep him from having to serve time in the same facility with Eugene Parsons, who had threatened and assaulted Cowart on several occasions. And, Deputy Sauro testified that he did not charge Cowart with DUI because he "got caught up in the moment as to why [Cowart's] life was in danger" and did not take the proper steps (a field sobriety test and breath test) for so charging him.

At the conclusion of that hearing, the district court ruled that defense counsel "can ask [Cowart] anything about whether the Government agent helped him" but not "any reference to the ticket fixing". The court stated further that defense counsel were "entitled to go into ... assistance that the Government may have provided [Cowart]". Responding to requests for clarification, the court stated: "I'll allow you to get in the fact that [Cowart] was stop[ped] on Highway 49, it was in April of this year, and that he was issue[d] a citation for illegal, irregular driving, and that [the Customs Agent] appear[ed] [at the Gulfport jail] on his behalf.... I think that that is as far as you can go."

In denying Parsons' motion for a new trial on this ground, the district court stated:

> An evidentiary hearing was held on this issue
> prior to offering evidence on this issue at
> trial. The testimony of the agent and law

enforcement authorities involved in this situation did not corroborate Parsons' concerns that Cowart was offered preferential treatment by the state of Mississippi because of the alleged intervention of the [Customs Agent]. There is no basis for a new trial because of the defendant's unfounded allegations. This Court thoroughly analyzed the defendant's positions at the time of the suppression hearing and denied the motion.

The district court did not abuse its discretion by refusing to allow cross-examination about defense counsel's unfounded allegations that the Customs Agent had caused State officials not to charge Cowart with DUI. Nor did the court violate the Confrontation Clause by prohibiting Parsons from engaging in inappropriate cross-examination about unsubstantiated allegations. *See* **Mizell**, 88 F.3d at 293; **Cooks**, 52 F.3d at 104.

Even assuming an abuse of discretion, however, any error was harmless. *See* **Mizell**, 88 F.3d at 295. The jury was aware that Cowart was a convicted felon and that he had been granted immunity on drug charges. The defense was not prohibited from cross-examining Cowart on whether he was helped by the Government in connection with the traffic stop, and he was subjected to extensive, vigorous cross-examination about his motivation for testifying. Under these circumstances, the jury had more than sufficient information to appraise Cowart's bias and motivation for testifying. *See* **id**. at 293.

E.

Parsons contests the denial of a severance, citing in support of this claim his witnesses' testimony that they had never seen him use drugs, and co-defendant Eugene Parsons' conflicting testimony that he had used cocaine with Parsons. Parsons (who did not testify at trial) did not move for severance prior to trial, and raised the issue in writing for the first time in his motion for new trial. He asserts, however, that he adopted Pittman's pretrial motion for severance. Parsons did not furnish a record citation in support of that assertion, and we have not found support for it in our independent examination of the record.

Failure to move for severance prior to trial constitutes a waiver of the issue unless the district court grants relief from the waiver "for cause shown". FED. R. CRIM. P. 12(b)(5), (f); *United States v. Castillo*, 77 F.3d 1480, 1490 n.19 (5th Cir.), *cert. denied*, ___ U.S. ___, 117 S. Ct. 180, 236, 502 (1996). In his new trial motion, Parsons asserted that his counsel relied on Eugene Parsons' counsel's false representation that Eugene Parsons' testimony would not incriminate him (Parsons). Even assuming that such reliance constitutes good cause for failing to move for a severance before trial, Parsons has not established an abuse of discretion. *See id*. at 1490 (denial of motion for severance reviewed for abuse of discretion). "[S]everance is not automatically required merely because co-defendants present mutually antagonistic defenses." *Id*. at 1491. "Determinations

concerning the risk of prejudice in this context must generally be left to the sound discretion of the district court if we are to give any weight to the rule that persons indicted together should be tried together, especially in conspiracy cases." *Id*. (internal quotation marks and citations omitted).

As the court noted in denying Parsons' motion for new trial, Parsons was acquitted on the count on which he and Eugene Parsons were indicted together, and Eugene Parsons was acquitted on all charges against him, which indicates that the jury followed the court's instructions to consider separately the evidence against each defendant and as to each count. Such instructions have been held to reduce any risk of prejudice. *Id*. We note also that Parsons did not cross-examine Eugene Parsons; he did not ask for a severance following Eugene Parsons' testimony; and he did not seek a limiting instruction following the incriminating testimony. In short, Parsons has not shown the kind of "specific and compelling prejudice" necessary to establish an abuse of discretion. *See United States v. Faulkner*, 17 F.3d 745, 759 (5th Cir.), *cert. denied*, ___ U.S. ___, 115 S. Ct. 193, 663 (1994).

F.

Next, Parsons charges that the district court abused its discretion by refusing to admit evidence that he had not failed any drug tests while on bond. He asserts that the evidence should not have been excluded on relevance grounds because it was not offered

to show good character, but to impeach Theresa Bryant, a Government witness who testified that she used cocaine with Parsons eight months before trial, while Parsons was on bond. We review evidentiary rulings only for abuse of discretion and, even if we find an abuse of discretion, "the error is not reversible unless the defendant was prejudiced". *United States v. Coleman*, 78 F.3d 154, 156 (5th Cir.), *cert. denied*, ___ U.S. ___, 117 S. Ct. 230 (1996); *see* FED. R. EVID. 103(a).

We find no abuse of discretion. At trial, Parsons did not seek admission of the evidence for the purpose now asserted through new counsel on appeal; instead, he sought to admit the evidence to "corroborate the witnesses that have testified that they have never seen him use drugs". The district court ruled correctly that the evidence was not admissible for that purpose. *See United States v. Marrero*, 904 F.2d 251, 260 (5th Cir.), *cert. denied*, 498 U.S. 1000 (1990) ("evidence of noncriminal conduct [offered] to negate the inference of criminal conduct is generally irrelevant").

### G.

It is claimed that the district court erred by refusing to conduct an *in camera* review of the United States Marshal's file on the above-referenced Government witness Theresa Bryant to determine whether it contained matter required to be disclosed pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*,

405 U.S. 150 (1972).  This contention has no merit; the district court did *not* refuse to review the file.

After the jury began deliberating, the district court conducted an evidentiary hearing on the defendants' joint motion for a **Brady/Giglio** hearing, in which they asserted that the Government had failed to disclose all of Bryant's prior convictions and had failed to disclose the existence of pending federal charges against her.  At that hearing, the Assistant United States Attorney represented to the court that there were no federal charges pending against Bryant.  In response to questions by Eugene Parsons' counsel, a Deputy United States Marshal testified that, in February 1995, pursuant to a writ of habeas corpus *ad testificandum*, he brought Bryant to Mississippi from Louisiana, where she was incarcerated in a Parish jail on state charges; that he did not know of any specific state charges pending against her at that time or what happened to those charges; and that he knew of no assistance by federal agents on any state charges.

At the conclusion of his questioning, Eugene Parsons' counsel requested the court to direct the United States Marshal's office to produce its complete file on Bryant and requested that the court review that file *in camera*.  The Government did not object to producing the file or to allowing the *in camera* review; and the court agreed to review it.  At the conclusion of the hearing, the court overruled the motion "as having no foundation in fact".

Bryant testified extensively on direct, cross, and redirect about her criminal history and drug abuse.  Even assuming the existence of pending state charges against her, and assuming, further, that the Government failed to disclose the existence of such charges, this did not constitute a **_Brady_** violation, because the defendants presented no evidence that federal authorities had the ability to influence the disposition of any pending state charges, much less any evidence that Bryant actually received any federal assistance on those charges.  _See_ **_United States v. Thorn_**, 917 F.2d 170, 176 (5th Cir. 1990).

## H.

Pittman maintains that the prosecutor engaged in misconduct by approaching witnesses during cross-examination and shouting at them.  "A criminal defendant bears a substantial burden when attempting to show that prosecutorial improprieties constitute reversible error."  **_United States v. Bermea_**, 30 F.3d 1539, 1563 (5th Cir. 1994), _cert. denied_, ___ U.S. ___, 115 S. Ct. 1113, 1825 (1995).  "Control over the conduct of a trial, including the scope of permissible cross-examination, is squarely within the discretionary powers of the district court, and its ruling will be disturbed on review only if the district court abuses that discretion."  **_United States v. Waldrip_**, 981 F.2d 799, 803 (5th Cir. 1993) (internal quotation marks and citation omitted); _see also_ FED. R. EVID. 611(a) ("The court shall exercise reasonable control

- 14 -

over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.").

In denying Pittman's motion for a new trial on this ground, the district court stated:

> Despite witnesses' statements of fear and intimidation, there is no evidence that the alleged aggressive questioning by the prosecutor influenced their testimony concerning the defendants. The prosecutor was admonished concerning his behavior. Defense counsel also approached certain witnesses during questioning and were not required to remain at the podium during cross-examination.

It was within the court's discretion to permit the prosecutor to move away from the podium during cross-examination. And, even assuming that the prosecutor impermissibly raised his voice, there is no indication that this affected the witnesses' testimony concerning Pittman (or the other defendants).

## I.

Pittman next claims reversible error because the Government was permitted to cross-examine him about his marital difficulties and about a positive drug test result after his arrest. The admissibility of evidence offered to impeach a criminal defendant who testifies is committed to the "very substantial" discretion of

the district court.  ***United States v. Farias-Farias***, 925 F.2d 805, 809 (5th Cir. 1991).

1.

Pittman testified on direct examination that he had tried marijuana in the past, but that he did not like it because "it makes you a lazy bum"; and that he had tried cocaine, but could see what it has done to people and would "rather keep my money in my pocket". On cross-examination, he testified, without objection, that his last cocaine use had been approximately two months prior to trial.  The Government then questioned him about failing a drug test on that occasion.

Pittman contends that the examination about the drug test violated FED. R. EVID. 404(b) (evidence of other crimes, wrongs, or acts inadmissible to show action in conformity therewith).  But, he did not object on that basis at trial; instead, his counsel asserted that "[h]e's already answered, he admitted it, he said I did.  I think anymore barraging on this particular issue is totally irrelevant.  It's just an attempt to bolster a bad urine screen; it's totally irrelevant.  He's admitted he had the dirty urine, and that's the end."

It goes without saying that, "[i]n order to preserve a claim of error for appellate review, a party must timely object or move to strike the objectionable evidence, *stating the specific ground of the objection*."  ***United States v. Martinez***, 962 F.2d 1161, 1165-

- 16 -

66 (5th Cir. 1992) (emphasis added); *see also* FED. R. EVID. 103(a)(1) ("[e]rror may not be predicated upon a ruling which admits ... evidence unless a substantial right of the party is affected" and "a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context"); FED. R. CRIM. P. 52(b).

Because Pittman did not object at trial on Rule 404(b) grounds, we review the claimed violation of that Rule only for plain error. *See* FED. R. EVID. 103(d); FED. R. CRIM. P. 52(b); **United States v. Calverley**, 37 F.3d 160, 162-64 (5th Cir. 1994) (en banc) (if appellant shows clear or obvious error that affects his substantial rights, appellate court has discretion to correct error if such error seriously affects the fairness, integrity, or public reputation of judicial proceedings), *cert. denied*, ___ U.S. ___, 115 S. Ct. 1266 (1995). There was no plain error. Because Pittman's testimony about cocaine and marijuana on direct examination implied that he had not recently used drugs, the Government was entitled to question him about such use, as evidenced by the test result. In any event, in the light of his unobjected-to testimony that he had used cocaine two months before trial, the admission of the evidence about a failed drug test following such use was harmless.

2.

Nor did the district court abuse its discretion by allowing the Government to cross-examine Pittman about his domestic situation. On direct examination, Pittman testified that he was "currently married" to Lucy Pittman; that they had two children; and that they lived with his mother-in-law. On cross-examination, over Pittman's objection on relevance grounds, he admitted that he and his wife were separated. As the district court noted in overruling Pittman's objection, Pittman's domestic situation became relevant (as to Pittman's credibility) when he testified about it on direct examination.

J.

Pittman contends that counts 2, 3, 5 (possession with intent to distribute cocaine on three separate occasions) and part of count 10 (possession with intent to distribute 17 pounds of marijuana and 123.4 grams of cocaine from November 1990 through October 1994) merged with count 11 (possession with intent to distribute 510.5 grams of cocaine from July 1993 through December 1994), and should have been dismissed. "We review issues of multiplicity *de novo*." *United States v. Nguyen*, 28 F.3d 477, 482 (5th Cir. 1994).

There was no multiplicity. Each count charged separate and distinct violations of the law: count 2, eight to ten ounces of cocaine obtained by Cowart and Pittman on a trip to Houston in July 1992; count 3, a kilogram of cocaine obtained by Cowart and Pittman

on a trip to Houston in August 1992; count 5, Pittman's distribution of 2.34 grams of cocaine to John Jones on March 24, 1993; count 11, Pittman's distribution of cocaine to Parsons and Theresa Bryant from July 1993 through December 1994; and count 10, sales of marijuana and cocaine by Pittman to numerous persons from November 1990 through October 1994, but not including the sales charged in the other counts in issue.

## K.

Parsons maintains that the evidence on count 8 (possession with the intent to distribute 3.5 grams of cocaine) was insufficient because it proved no more than simple possession of cocaine. The Government responds that the evidence is sufficient to convict him as an aider and abetter because he paid his employee to make the cocaine purchase for him.

Because Parsons moved for a judgment of acquittal at the close of the Government's case-in-chief and renewed that motion at the close of all the evidence, we review his sufficiency claim to determine whether a rational trier of fact could have found that the Government proved the essential elements of the crime charged beyond a reasonable doubt. *E.g., **United States v. Webster***, 960 F.2d 1301, 1307-08 (5th Cir.), *cert. denied*, 506 U.S. 927 (1992).

"To be guilty of aiding and abetting possession of drugs with intent to distribute, [the] defendant must have aided and abetted *both* the possession of the drug and the intent to distribute it."

- 19 -

*United States v. Williams*, 985 F.2d 749, 753 (5th Cir.), *cert. denied*, 510 U.S. 850 (1993) (emphasis added); *see also **United States v. Jaramillo***, 42 F.3d 920, 923 n.2 (5th Cir.) (emphasis added) ("[t]he government must ... prove *both* aspects of the crime, possession *and* intent to distribute, to sustain a conviction for aiding and abetting possession of cocaine with intent to distribute"), *cert. denied*, ___ U.S. ___, 115 S. Ct. 2014 (1995).

The evidence on count 8 consisted of the following. Freddy Odom testified that he worked for Parsons as a process server and performed other services for him; that, in 1992, Parsons asked him if he knew where Parsons could obtain cocaine; that he purchased an "eight-ball" (3.2 grams) of cocaine from Tommy Roberts and delivered it to Parsons at Parsons' office; that Parsons paid him $200 for obtaining the cocaine; and that he subsequently paid Roberts. Odom testified further that Roberts later told him that Parsons subsequently tried to purchase cocaine directly from Roberts, but that Roberts would not sell it to him. Roberts corroborated Odom's testimony, except that he testified Odom did not pay him for the cocaine.

It goes without saying that this evidence is more than sufficient to prove Parsons possessed the cocaine obtained for him by Odom; but, it is insufficient to prove intent to distribute. Although there was evidence that Parsons frequently distributed cocaine by giving it to, or sharing it with, friends and

acquaintances, the Government did not introduce evidence that Parsons shared any of the cocaine obtained via Odom from Roberts. Although intent to distribute can be inferred from the possession of a large quantity of narcotics, *e.g.*, **United States v. Lucien,** 61 F.3d 366, 376 (5th Cir. 1995), that inference is not applicable here, in light of the evidence that Parsons was a heavy cocaine user (Theresa Bryant testified that she and Parsons used "maybe an ounce" (28.35 grams) of cocaine in one night).

As noted, the Government asserts that Parsons aided and abetted the distribution by having his employee, Odom, obtain cocaine for him; but, for the reasons stated above, this does not support an inference that Parsons intended to distribute the cocaine; no rational trier of fact could make such a finding. Accordingly, the Government failed to present sufficient evidence to satisfy one of the two elements necessary for proving aiding and abetting possession with intent to distribute. In short, to affirm on this count, on the evidence presented, would mean that any purchase of cocaine through a middleman would constitute aiding and abetting possession with intent to distribute. The fact that Roberts would not sell directly to Parsons does not alter this conclusion. It is true that, by using Odom, Parsons made the illegal sale possible; but, that is no different from Parsons purchasing directly; such a purchase makes distribution possible. The distribution was *only* to and for Parsons.

L.

Conceding that the issue is being raised for the first time on appeal, Parsons claims that the district court erred by including amounts of cocaine possessed for personal use in calculating his base offense level under the Sentencing Guidelines. Parsons does not specify the amount of cocaine that he allegedly possessed for personal use, and the evidence introduced at the sentencing hearing provides no basis for making such a calculation.

Because Parsons failed to object to the inclusion of amounts of cocaine possessed for personal use in calculating his offense level, the district court's inclusion of those amounts is reviewed only for plain error. *E.g.*, **United States v. Vital**, 68 F.3d 114, 118-19 (5th Cir. 1995); **Calverley**, 37 F.3d at 162-64. Parsons relies on **United States v. Kipp**, 10 F.3d 1463, 1465-66 (9th Cir. 1993), in which the Ninth Circuit held that the quantity of drugs possessed merely for personal use should not be included in calculating a defendant's base offense level. The Eleventh Circuit recently rejected the analysis in **Kipp** and joined the First, Seventh, Eighth, and Tenth Circuits in holding that drugs intended for personal use by a defendant are properly included in determining their base offense levels. **United States v. Antonietti**, 86 F.3d 206, 209-10 (11th Cir. 1996). Our court has not specifically addressed the issue, but it is not necessary for us to do so in this instance, because the amount of drugs for which

a defendant will be held accountable is a factual finding, *e.g.*, *United States v. Bermea*, 30 F.3d at 1575; and, "[q]uestions of fact capable of resolution by the district court upon proper objection at sentencing can never constitute plain error." *Vital*, 68 F.3d at 119.

M.

Pittman contends also that the district court erred in calculating the quantity of drugs attributable to him. Because Pittman preserved the issue by objecting to the PSR's calculation and by objecting at sentencing, we review the finding under the "clearly erroneous" standard. *United States v. Bermea*, 30 F.3d at 1575. The clear error standard is well-known, to say the least: "A finding of fact is clearly erroneous when, although there is enough evidence to support it, the reviewing court is left with a firm and definite conviction that a mistake has been committed." *Id*.

Pittman asserts that the district court should have calculated his sentence on the basis of lesser amounts testified to at trial, rather than relying upon the PSR, which was based on information provided by the case agent. Pittman did not offer any evidence at sentencing to dispute the amount of drugs calculated in the PSR, which the district court accepted. Because "a PSR generally bears sufficient indicia of reliability to be considered by the trial court as evidence in making the factual determinations required by

the sentencing guidelines", *id.*, and because Pittman offered no contradictory evidence, the district court did not clearly err by accepting the PSR's calculation of the amount of drugs attributable to Pittman.

III.

For the foregoing reasons, Parsons' convictions on all but count 8 are **AFFIRMED**; his conviction on that count is **REVERSED**, and the case is **REMANDED** for entry of a judgment of acquittal on that count, and for resentencing.  Pittman's convictions and sentences are **AFFIRMED**.

*AFFIRMED in part, REVERSED in part, and REMANDED*